# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

ROCK ROOFING, LLC,
an Arizona limited liability company,

       Plaintiff,

v.                                                                                                                          No. CIV 18-1193 RB/GBW

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,

       Defendant.

## MEMORANDUM OPINION AND ORDER

       This lawsuit requires the Court to determine whether a non-signatory surety may enforce the arbitration provision in a subcontract entered into between a subcontractor and a prime contractor, where the subcontractor has brought suit against the surety pursuant to a payment bond that provides for a right to bring a lawsuit in the event of nonpayment. The Court finds that under the facts of this case, the surety may enforce the arbitration agreement under a theory of equitable estoppel and that the arbitration provision must be exercised before the subcontractor can bring suit pursuant to the payment bond, as the right to bring suit is derived from the terms of the subcontract.

**I.     Factual Background**[1]

       In June 2016, Spring River Apartments Limited Partnership LLLP (Spring River) contracted with ICON Professional Building Co., LLC dba ICON Builders Southwest (ICON) to construct the Spring River Apartments (the Spring River Contract). (Doc. 13 (Am. Compl.) ¶ 12; *see also* Doc. 20-1.) Travelers Casualty and Surety Company of America (Defendant), a

---

[1] The Court recites the facts relevant to this motion as they are derived from the Amended Complaint (Doc. 13) and construes them in a light most favorable to Plaintiff, the non-moving party.

Connecticut corporation (Am. Compl. ¶ 2), issued a payment bond to ICON "in the amount of $15,579,521.00 to cover [ICON's] obligation to 'pay for labor, materials, and equipment' furnished for use in the performance of the Spring River Contract." (*Id.* ¶ 13 (quoting Doc. 13-1 at 2).)

In August 2016, ICON entered into a subcontract with Rock Roofing, LLC (Plaintiff), an Arizona limited liability company (*id.* ¶ 1), "to furnish the labor, materials, and equipment required to roof the Spring River Apartments." (*Id.* ¶ 16 (citing Doc. 13-2).) Plaintiff alleges that ICON has failed to pay it pursuant to the subcontract and several change orders. (*See id.* ¶¶ 18–35; *see also* Docs. 13-2; 13-3.) Plaintiff filed a Mechanic's Claim of Lien with the County Clerk of Chaves County, New Mexico on December 1, 2017. (Am. Compl. ¶ 44; *see also* Doc. 13-4.) On December 11, 2017, ICON filed a Petition to Cancel Lien in the state district court. *See ICON Prof'l Bldg. Co. v. Rock Roofing, LLC*, No. D-504-CV-2017-01205, Pet. (5th Jud. Dist. Ct. Dec. 11, 2017). The state district court granted ICON's petition on December 20, 2017, and ordered ICON to deposit one and one-half times the Lien amount into the state court's registry as a security bond. (Am. Compl. ¶¶ 46–47; *see also* Doc. 13-5.) Defendant issued the Bond to Release Mechanic's Lien as required. (Am. Compl. ¶ 48 (citing Doc. 13-6).) Plaintiff asserts that it is owed $971,183.55 plus interest and "is entitled to have the Bond foreclosed against ICON and the proceeds thereof applied in payment of the amount due" pursuant to N.M. Stat. Ann. § 48-2-9(C). (*Id.* ¶¶ 49–50.)

Plaintiff filed suit in this Court on December 18, 2018. (Doc. 1.) Plaintiff asserted that the Court has jurisdiction over the lawsuit pursuant to the Miller Act, 40 U.S.C. §§ 3131–3134. (*Id.* ¶ 4.) It filed an Amended Complaint on March 1, 2019, and added an allegation that the Court also has diversity jurisdiction. (*See* Am. Compl. ¶¶ 1–3, 5.) Plaintiff asserts two claims: (1) that it is entitled, pursuant to the Miller Act, to collect on the payment bond (*id.* ¶¶ 36–42); and (2) that it

is entitled, pursuant to N.M. Stat. Ann. § 48-2-9(C), to have the Bond to Release Mechanic's Lien foreclosed and the proceeds applied to the amount it is owed from ICON (*id.* ¶¶ 43–50).

Defendant moves to dismiss Count I on the basis that Plaintiff has failed to state a claim under the Miller Act. (*See* Doc. 10 at 4–5.) It also moves the Court to dismiss the Amended Complaint or for an order staying and compelling arbitration. (*See id.* at 5–9.) ICON moves, pursuant to Federal Rule of Civil Procedure 24(a)(2), to intervene in the lawsuit. (*See* Doc. 24.)

## II. The Court will grant Defendant's motion to dismiss Count I.

### A. Motion to Dismiss Standard

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (citation omitted). To survive a motion to dismiss, the complaint does not need to contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

"[W]hile ordinarily, a motion to dismiss must be converted to a motion for summary judgment when the court considers matters outside the complaint, *see* Fed. R. Civ. P. 12(d), matters that are judicially noticeable do not have that effect . . . ." *Genesee Cty. Emps.' Ret. Sys. v. Thornburg Mortg. Sec. Tr. 2006-3*, 825 F. Supp. 2d 1082, 1122 (D.N.M. 2011) (citing *Duprey v. Twelfth Judicial Dist. Court*, 760 F. Supp. 2d 1180, 1192–93 (D.N.M. 2009)).

> Exhibits attached to a complaint are properly treated as part of the pleadings for purposes of ruling on a motion to dismiss. . . . [F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record.

3

> However, the documents may only be considered to show their contents, not to prove the truth of matters asserted therein.

*Id.* at 1122–23 (quoting *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006)). Thus, the Court may consider the exhibits Plaintiff attached to and referenced in its Amended Complaint. (*See* Docs. 13; 13-1–13-6.)

The Court may also consider the Spring River Contract that Plaintiff attached to its response brief, as the contract "is referred to in the complaint and is central to the plaintiff's claim . . . ." *Radian Asset Assurance Inc. v. Coll. of the Christian Bros. of N.M.*, No. CIV 09-0885 JB/DJS, 2011 WL 10977180, at *17 (D.N.M. Jan. 24, 2011) (quotation and subsequent citations omitted); *see also Raja v. Ohio Sec. Ins. Co.*, 305 F. Supp. 3d 1206, 1238 n.9 (D.N.M. 2018). Plaintiff cites to the Spring River Contract throughout the Amended Complaint (*see* Am. Compl. ¶¶ 12–15, 37–39, 42), and Defendant does not dispute its authenticity (*see* Doc. 21).

**B.     Plaintiff has not sufficiently alleged a claim under the Miller Act.**

Plaintiff brings its first claim for collection on the payment bond under the Miller Act, 40 U.S.C. § 3131(b)(2). (Am. Compl. ¶ 37.) Defendant argues that Plaintiff has not alleged facts sufficient to maintain a claim under the Miller Act. (*See* Doc. 10 at 2.) "The Miller Act, 40 U.S.C. § 3131 *et seq.*, requires that before a contract of more than $100,000 is awarded for construction, alteration or repair of any public building or public work of the U.S. Government, a performance bond and payment bond must be supplied, which become binding once the contract is awarded." *United States for use of Sundance Roofing, Inc. v. HDR Enters., LLC*, No. CIV 09-00441-MV-WDS, 2010 WL 11626653, at *2 (D.N.M. Mar. 30, 2010) (citing 40 U.S.C. § 3131). The Miller Act "provide[s] a remedy for suppliers of labor and material to a federal project[,]" who may not "have their usual security interest because a lien cannot attach to federal property." *Id.* (quoting

*Kennedy Elec. Co. v. U.S. Postal Serv.*, 508 F.2d 954, 957 (10th Cir. 1974)).

Defendant first argues that "Plaintiff concedes that ICON entered into a contract with a private limited partnership, not the federal government . . . ." (Doc. 10 at 4.) "The plain language of the statute makes clear that the Miller Act provides a cause of action only on the payment bond between the general contractor and the United States." *United States for Daro Tech, Ltd v. Centerre Gov't Contracting Grp., LLC*, No. 13-CV-01811-REB-KMT, 2014 WL 1215565, at *9 (D. Colo. Mar. 24, 2014). "Section 3131(b) requires a payment bond between a contractor and the government; the right to bring a civil action under section 3133(b) is 'on the payment bond' required by section 3131(b)." *Id.* (citing 40 U.S.C. § 3131(b); 40 U.S.C. § 3133(b); *Tri-State Road Boring, Inc. v. U.S. Fid. & Guar. Co.*, 959 F. Supp. 345, 347 (E.D. La. 1996) ("Miller Act contains a 'specific requirement that a payment bond be furnished to the United States when the work is a public work'"); *Capps v. Fid. & Dep. Co. of Md.*, 875 F. Supp. 803, 808 (M.D. Al. 1995) ("By statute, the payment bond must run to the benefit of the United States, and subcontractors and suppliers are permitted to sue on the bond in federal court in the name of the United States.")) (subsequent citations omitted). "Moreover, '[a] subcontractor's right to sue for recovery under the Miller Act is traditionally limited to a general contractor's payment bond.'" *Id.* (quoting *Arena v. Graybar Elec. Co.*, Inc., 669 F.3d 214, 220 (5th Cir. 2012)).

In *Daro Tech*, Kiewit-Turner (K-T) and the United States Department of Veteran Affairs (VA) entered into a prime contract for renovations to a medical center owned and operated by the VA. *Id.* at *3. K-T and its sureties executed a payment bond pursuant to 40 U.S.C. § 3131(b)(2). *Id.* K-T then entered into a subcontract with Centerre for labor and supply materials. *Id.* Centerre and its surety executed a payment bond for the subcontract. *Id.* Finally, Centerre entered into a sub-subcontract with Daro Tech for asbestos abatement and building demolition work. *Id.* Daro

Tech later filed suit against Centerre under the Miller Act. Centerre argued that the claim was not cognizable under the Miller Act because it was not based on a payment bond furnished to the Government, but to K-T—a contractor. *See id.* at *9. The court agreed and found that because the plaintiff's suit was "based on a payment bond issued in conjunction with the subcontract, not the prime contract, [it did] not fall under the Miller Act" and the court did not have "federal question subject-matter jurisdiction over" that particular claim. *See id.*

Here, Plaintiff's claim is based on a payment bond between ICON and Spring River. Plaintiff has not asserted that either party to the Spring River contract is the Government or an agent or agency of the Government. *See Diversified Carting, Inc. v. City of New York*, 423 F. Supp. 2d 85, 93 (S.D.N.Y. 2005) ("The provisions of the Miller Act are only applicable where the work in question was contracted for by the United States, or one of its agents or agencies.") (quotation marks and citation omitted).

Second, Defendant argues that Plaintiff has not adequately alleged that the apartment complex is a public building or public work as required by 40 U.S.C. § 3131(b). (*See* Doc. 10 at 4.) The Amended Complaint alleges that "[u]pon information and belief, the United States Department of Housing and Urban Development [(HUD)] provided funding for the construction, alteration, or repair of the Spring River Apartments." (Am. Compl. ¶ 14.) The Court finds that this allegation is insufficient to demonstrate either that the payment bond was furnished to the Government as required by 40 U.S.C. § 3131(b)(2), or that the apartment complex was a public building or public work as required by § 3131(b).

Defendant further argues that "[w]here a project is merely funded, or in this case insured, by [HUD] the Miller Act is not triggered . . . ." (Doc. 10 at 5 (citing *Advin Elec., Inc. v. Reliance Sur. Co.*, 682 A.2d 1173, 1176 (Ct. App. Md. 1996)).) In *Advin Electric*, the district court found

that "[t]he Government [did] not own the land on which [the construction project] was built and neither it nor any authorized Government agent was a party to the contract with" the contractor. 682 A.2d at 1176. Moreover, the court found that even though "HUD ha[d] assumed, as an incident of its role as funder of the project, an extensive supervisory role over the construction activity, . . . that alone [did] not make the project a public work of the United States." *Id.* "[T]he mere fact that the property might, at some future point, be owned by the Government does not render it immune from present liens, and thus would not make the Miller Act necessarily applicable." *Id.* (citing *Armstrong v. United States*, 364 U.S. 40, 42 (1960)) (subsequent citation omitted).

Plaintiff fails to substantively respond to this issue in either its response or its surreply and has, therefore, waived the issue. (*See* Docs. 20; 28.) Instead, it merely asserts that the Court should not dismiss the Amended Complaint because the Court has diversity jurisdiction over the lawsuit. (*See* Doc. 20 at 2–3.) Because Plaintiff has not responded to Defendant's argument, and because Plaintiff has not adequately alleged facts to show that this claim falls under the Miller Act, the Court finds that it does not have federal question jurisdiction over this action pursuant to the Miller Act and grants Defendant's motion on this issue. Plaintiff's Miller Act claim is hereby dismissed with prejudice.

**III.     The Court will grant Defendant's motion to compel arbitration.**

Defendant also moves, under the Federal Arbitration Act (FAA), to compel Plaintiff to arbitrate its claim pursuant to the arbitration clause in the subcontract between Plaintiff and ICON. (Doc. 10 at 5–6.) Defendant is not a signatory to the subcontract. (*See* Doc. 13-2.) The subcontract provides:

> 10.1. Mediation. Any claim arising out of or related to this Subcontract, except those waived in the Subcontract, shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either

7

> party. . . .
>
> 10.2. Arbitration. Any claim arising out of or related to the Subcontract, except claims specifically waived in the Subcontract shall be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve the disputes by mediation in accordance with the provisions describe [sic] in Section 10.1 above. Claims not resolved by mediation shall be decided by arbitration . . . .

(Doc. 13-2 at 8.) Defendant argues that because Plaintiff's remaining claim for foreclosure of the Bond to Release the Mechanic's Lien arises out of the subcontract, it is subject to mediation and arbitration. (Doc. 10 at 5.)

### A. Motion to Compel Arbitration Standard

"The FAA provides that a written agreement requiring arbitration of controversies arising out of 'a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *THI of N.M. at Hobbs Ctr., LLC v. Spradlin*, 893 F. Supp. 2d 1172, 1177 (D.N.M. 2012), *aff'd*, 532 F. App'x 813 (10th Cir. 2013) (quoting 9 U.S.C. § 2). "There is a 'clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (quoting *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)).

"The FAA, however, 'was not enacted to force parties to arbitrate in the absence of an agreement'" but "'to enforce private agreements into which parties had entered.'" *Id.* at 1178 (quoting *Avedon Eng'g., Inc. v. Seatex*, 126 F.3d 1279, 1286 (10th Cir. 1997)). "Accordingly, '[t]he existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked.'" *Id.* (quoting *Avedon Eng'g*, 126 F.3d at 1287). Because "arbitration is a matter of contract," courts "apply state contract formation principles [in order to] decide whether or not the parties agreed to arbitrate." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977

(10th Cir. 2014) (quotation and citation omitted). "The party attempting to compel arbitration carries the burden of demonstrating a valid arbitration agreement." *Fundamental Admin. Servs., LLC v. Patton*, 504 F. App'x 694, 698 (10th Cir. 2012) (quoting *Corum v. Roswell Senior Living, LLC*, 248 P.3d 329, 331 (N.M. Ct. App. 2010)).

### B. Analysis

Plaintiff contends that as Defendant is not a party to the subcontract, the FAA does not apply and Defendant is not entitled to enforce the arbitration agreement. (Doc. 20 at 3.) Plaintiff also argues that the payment bond "states that a lawsuit is the proper remedy for a claimant to pursue." (*Id.* at 4 (citing Doc. 13-1 at 2).)

#### 1. Defendant may enforce the arbitration agreement.

Plaintiff first argues that the subcontract does not contemplate arbitration with a non-signatory, as the provision provides that a "[d]emand for arbitration shall be filed in writing <u>with the other party to the Subcontract</u>." (Doc. 20 at 4 (quoting Doc. 13-2 at 8).) Defendant relies on the New Mexico Supreme Court's decisions in *K.L. House Construction Co. v. City of Albuquerque*, 576 P.2d 752 (N.M. 1978) and *Spaw-Glass Construction v. Vista De Santa Fe*, 844 P.2d 807 (N.M. 1992). (*See* Docs. 10 at 6–7; 20 at 5.) In both cases, the court found that the parties to a contract should arbitrate where the issue was reasonably related to the subject matter of the contract. *See K.L. House*, 576 P.2d at 754; *Spaw-Glass*, 844 P.2d at 809. Defendant argues that because the issue of payment is reasonably related to the subject matter of the subcontract, and because the subcontract does not limit the issues on which arbitration applies, Plaintiff should be compelled to arbitrate. (*See* Doc. 10 at 7.) As Plaintiff notes, however, neither court considered the issue in the context of a nonsignatory's request to enforce an arbitration agreement. (*See* Doc. 20 at 5.)

9

Defendant also cites to *New Mexico Highway and Transportation Department v. Gulf Insurance Co.*, 996 P.2d 424, 427 (2000) for the proposition that a "surety steps into the shoes of its principal." (Doc. 21 at 3.) Plaintiff contends that the case is inapposite, however, as it involved the issue of whether a surety that has satisfied claims brought against a contractor pursuant to performance and payment bonds may then assert rights as a secured creditor to certain funds held by the project owner, *see N.M. Hwy & Transp. Dep't*, 996 P.2d at 425, 426, and not whether a surety may claim the contractor's arbitration rights. (*See* Doc. 28 at 2.)

The parties agree that "[t]he issue of whether a non-signatory can be bound by, or compel arbitration under, an arbitration agreement is governed by state law." *THI of N.M. at Vida Encantada, LLC v. Lovato*, 848 F. Supp. 2d 1309, 1326 (D.N.M. 2012) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009)). Under New Mexico law "[g]enerally, third parties who are not signatories to an arbitration agreement are not bound by the agreement and are not subject to, and cannot compel, arbitration." *Horanburg v. Felter*, 99 P.3d 685, 689 (N.M. Ct. App. 2004) (citations omitted). The New Mexico Court of Appeals has, however, recognized exceptions to this general rule.

In *Damon v. StrucSure Home Warranty, LLC*, the appellate court "address[ed] whether a party to a home warranty contract [could] enforce an arbitration provision contained in that warranty against a nonparty who nevertheless [sought] to invoke its benefits." 338 P.3d 123, 123–24 (N.M. Ct. App. 2014). There, the plaintiffs sought to recover from the defendant (a warranty administrator) on the basis of a home warranty. *See id.* at 124. The plaintiffs were not the original purchasers of the house, nor were they signatories to the home warranty. *Id.* The district court cited the general rule that "a party cannot be required to submit to arbitration any dispute which he has not agreed to submit" and declined to enforce the warranty's arbitration provision. *Id.* at 125. The

court of appeals reversed.

The *Damon* Court discussed "five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Id.* at 126 (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995); citing *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 (4th Cir. 2000)). Noting that the plaintiffs sued the warranty administrator to assert rights under the warranty, the court found that they were equitably estopped from avoiding the warranty's arbitration provision. *Id.* at 127–28.

*Damon* is distinguishable from this case, of course, as the signatory to the contract sought to enforce arbitration with the non-signatory plaintiffs. The *Damon* Court cited favorably to another New Mexico Court of Appeals opinion, however, that is more on point. *See id.* at 126 (citing *Horanburg*, 99 P.3d at 690). In *Horanburg*, the appellate court "considered whether a *nonparty* to an arbitration agreement could bind a *party* to the agreement to arbitrate—the reverse of the situation in" *Damon* and the exact situation before this Court. *See id.* The *Horanburg* Court did not ultimately apply equitable estoppel, but it did recognize that the theory can apply in the arbitration context. *Horanburg*, 99 P.3d at 690; *see also Damon*, 338 P.3d at 126–27. It stated that equitable estoppel may apply to allow a non-signatory to compel arbitration in "two circumstances: (1) when a signatory to the agreement must rely on the terms of the agreement in making a claim against a non-signatory; or (2) when a signatory alleges substantially interdependent and concerted misconduct by both another signatory and a non-signatory, making arbitration between signatories meaningless." *Horanburg*, 99 P.3d at 689 (citations omitted); *see also La Frontera Ctr., Inc. v. United Behavioral Health, Inc.*, 268 F. Supp. 3d 1167, 1218 (D.N.M. 2017) ("conclud[ing] that the Supreme Court of New Mexico would recognize that a nonsignatory to an arbitration

agreement may successfully rely on the doctrine of equitable estoppel to compel arbitration").

Here, Plaintiff seeks to recover monies allegedly due under a payment bond that is based on a subcontract containing an arbitration agreement. While Defendant does not use the term "equitable estoppel," its argument is premised on the fact that Plaintiff must rely on its subcontract with ICON in order to collect from Defendant on the payment bond. (*See* Doc. 10 at 6.) The Court finds that this situation presents the first of the two circumstances in which the New Mexico Court of Appeals has found it appropriate to apply equitable estoppel. *See Horanburg*, 99 P.3d at 689. Considering the decisions in *Horanburg* and *Damon*, the Court finds that the New Mexico Supreme Court would likely follow the reasoning of the court of appeals and find that Plaintiff is equitably estopped from disavowing the arbitration agreement where Plaintiff's claim stems from the subcontract that requires arbitration.

### 2. The subcontract's arbitration agreement clause controls.

Plaintiff next argues, without citing supporting authority, that even if the Court allows Defendant to move to compel arbitration on the subcontract, the payment bond itself provides authority for Plaintiff's lawsuit. (Doc. 20 at 4.) The payment bond provides that the "Contractor and Surety . . . agreed . . . that every claimant, who has not been paid in full before the expiration of a period of ninety (90) days after having last performed labor or last furnished materials or equipment, may sue on this Payment Bond for the use of such sum or sums as may be justly due Claimant . . . ." (Doc. 13-1 at 2.)

Again, the Court has found no New Mexico case directly on point, but it finds guidance in two nonbinding cases. First, in *ATCi Communicationns, Inc. v. Federal Insurance Co.*, No. 16-23374-CIV, 2016 WL 8739604 (S.D. Fla. Oct. 27, 2016), a sub-subcontractor brought an action against a surety for payment pursuant to a payment bond. *Id.* at *1. The surety moved to compel

arbitration. *Id.* The payment bond contained a provision almost identical to the one at issue here; it "authorize[d] any claimant, who has not been paid ninety days after completing its work, to sue under the payment bond instead of proceeding against the owner's property." *Id.* The plaintiff opposed the motion in relevant part on the bases that there was no agreement to arbitrate between it and the surety, and that the payment bond itself provided claimants a right to bring suit rather than arbitrate. *Id.* at *2. The court first found that "Florida law recognizes equitable estoppel as one of the exceptions permitting non-signatories to a contract to compel arbitration." *Id.* at *3 (citations omitted). The court further found that the arbitration provision trumped any right to bring suit because the plaintiff's claim on the bond was "100% derivative of [its] rights under the" sub-subcontract. *Id.* at *4.

In the second case, *United States ex rel. Tanner v. Daco Construction, Inc.*, the court was faced with a subcontractor who brought suit under the Miller Act against both the surety and the prime contractor based on a payment bond. 38 F. Supp. 2d 1299, 1300 (N.D. Okla. 1999). While the contractual provisions were different from those before the Court,[2] the *Tanner* court's conclusion is instructive. It opined that if it denied the motion to stay and compel arbitration, the subcontract's arbitration agreement "would be rendered meaningless, and, in every public works project where the subcontractor agrees to a similar clause, the subcontractor could circumvent the arbitration provision by suing the surety." *Id.* at 1306.

The Court finds the reasoning in *ATCi* and *Tanner* persuasive. Because Plaintiff's claim on

---

[2] In *Tanner*, the subcontract provided both for arbitration with the prime contractor and also reserved a right to bring suit against the surety. *United States ex rel. Tanner v. Daco Construction, Inc.*, 38 F. Supp. 2d 1299, 1300, 1305 (N.D. Okla. 1999). The court noted that "[t]he prudent way to reconcile the inconsistency in the two clauses is to assume that [the subcontractor] agreed to arbitrate the underlying dispute against [the prime contractor], while reserving its right to sue [the surety] in the event [the prime contractor] refused to pay an arbitration award in favor of [the subcontractor]." *Id.* at 1305.

13

the payment bond depends on its subcontract with ICON, the arbitration clause in the subcontract must precede Plaintiff's right to bring suit as provided by the payment bond. Accordingly, the Court will grant Defendant's motion to compel arbitration, and Defendant may proceed in accordance with Section 10.2 of the subcontract. (*See* Doc. 13-2 at 8.)

**IV.     The Court will deny ICON's motion to intervene as moot.**

On May 23, 2019, ICON moved, pursuant to Federal Rule of Civil Procedure 24(a)(2), to intervene in this lawsuit. (Doc. 24.) ICON disagrees with Plaintiff's contention that Defendant cannot require arbitration of the issues in this lawsuit and states that "if the Court should determine that [Defendant] may not assert the requirement to arbitrate under the subcontract, then ICON [seeks to] intervene and assert such right in its own name." (*Id.* at 2.) As the Court has granted Defendant's motion to compel arbitration, ICON's motion to intervene is moot.

**THEREFORE**,

**IT IS ORDERED** that Defendant's Rule 12(b)(6) Motion to Dismiss and Rule 12(b)(3) Motion to Dismiss and Compel Arbitration and, Alternatively, Request for Stay Pending Arbitration (Doc. 10) is **GRANTED IN PART** as described herein;

**IT IS FURTHER ORDERED** that this matter is **ADMINISTRATIVELY CLOSED** pending arbitration;

**IT IS FURTHER ORDERED** that if the parties have not completed arbitration and filed a joint motion to dismiss by **March 1, 2020**, the parties shall file a joint status report updating the Court on the status of this matter on that date.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE